```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF KENTUCKY
                CENTRAL DIVISION at LEXINGTON
```

HARRY HATTER,                       )
                                    )
                                    )   Civil Action No. 5:07-2-JMH
        Plaintiff,                  )
                                    )
v.                                  )
                                    )
                                    )   **MEMORANDUM OPINION AND ORDER**
CHRIS LIVINGOOD and                 )
SHANNON PARKS,                      )
                                    )
        Defendants.                 )

```
           **      **      **      **      **
```

This matter is before the Court on Defendants' Motion for Partial Summary Judgment [Record No. 18]. Plaintiff has filed a Response in opposition [Record No. 23], and Defendants have filed a Reply in support of their motion [Record No. 24]. This motion is now ripe for decision.

**I.   FACTUAL BACKGROUND**

On January 10, 2006, Christy Mattox was approached in the street by Plaintiff who "ran his mouth."[1]  [Record No. 18, Deft.

---

[1] Defendants seek to rely on certain deposition testimony of Plaintiff Harry Hatter and have cited to portions of the transcript in their memorandum in support of their motion for partial summary judgment. Defendants have not, however, provided the Court with a transcript of the testimony offered as required under Fed. R. Civ. P. 32(c). The Court cannot rely on information presented in this manner. Fed. R. Civ. P. 56(b) states that summary judgment may be rendered "if the pleadings, the discovery and the disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of

Mot. P. Sum. J., Exh. 1.] She and her husband told Plaintiff to go home and sleep, but Plaintiff refused. [*Id.*] Instead, he told her husband, Jeff Mattox, that he was "going to whoop [Mattox's] ass." [*Id.*] The Mattoxes then called the police. [*Id.* at Exh. 2.] When Officers Livingood and Parks arrived on the scene, the Mattoxes told Plaintiff "over and over that it was the police [department] and he kept telling them that they wasn't the police and he tried to grab their badges and they told him not to grab it." [*Id.* at Exh. 1.] At that point, Plaintiff "start[ed] fighting with the officers." [*Id.* at Exh. 2.]

Plaintiff was ultimately arrested and charged with multiple crimes on the night of January 10, 2006. The Uniform Citation issued by Defendant Parks charged him with disorderly conduct, menacing, and resisting arrest. [*Id.* at Exh. 3.] Officer Kevin Miller charged him with third degree assault. [*Id.* at Exh. 4.] There is no evidence of record showing that any further proceedings occurred with regard to the charges of assault, disorderly conduct, or menacing.² Plaintiff was, however, indicted by the Bourbon County grand jury on the charge of resisting arrest. [*Id.* at Exh. 5.] Ultimately, the jury found Plaintiff not guilty of resisting

---

law." Here, the discovery material has not been placed on file.

² Defendants have represented to the Court through counsel in their pleadings that the assault charge was dismissed by the Commonwealth and that the grand jury did not return an indictment on the charges of disorderly conduct or menacing.

2

arrest.

Plaintiff has sued Defendants Livingood and Parks in their individual capacities only. Plaintiff alleges that they violated his constitutional rights under the Fourth and Fourteenth Amendments, his civil rights under 42 U.S.C. §§ 1981, 1983, and 1988, and his rights under the Kentucky Revised Statutes by arresting and prosecuting him. [Record No. 1, Compl. at ¶¶ 1, 5-7.] Specifically, in Count I of his Complaint, Plaintiff avers that he was wrongfully and without probable cause arrested by Defendants Livingood and Parks and, thus:

> . . . wrongfully deprived of his liberty and . . . subjected to ridicule, scorn and contempt by those knowing of his detention, experienced mental anguish and emotional distress, and was otherwise damaged in excess of the jurisdictional limits of this Court.

[*Id*. at ¶¶ 14-15.] Plaintiff next avers that he was subjected to malicious prosecution by the actions of Defendants Livingood and Parks in Count II. [*Id*. at ¶¶ 17-18.] Finally, Plaintiff Hatter avers excessive use of force in Count III and seeks punitive damages in Count IV. [*Id*. at ¶¶ 20-21, 23.] Defendants' Motion for Partial Summary Judgment seeks relief only as to Counts I and II of the Complaint.

Having considered the parties' briefs and the relevant law and facts, it is the opinion of the Court that Plaintiff has failed to present facts which demonstrate a violation of clearly established constitutional law, for the reasons set forth below, and that

Defendants are shielded from these claims by qualified immunity. Accordingly, Counts I and II shall be dismissed with prejudice.

## II.  APPLICABLE STANDARD OF REVIEW

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no issue as to any material fact, and that the moving party is entitled to judgment as a matter of law."  The moving party may discharge its burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The nonmoving party, which in this case is the plaintiff, "cannot rest on [her] pleadings," and must show the Court that "there is a genuine issue for trial." *Hall v. Tollett*, 128 F.3d 418, 422 (6th Cir. 1997).  In considering a motion for summary judgment the court must construe the facts in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

When the question is one of qualified immunity, however, the analysis is somewhat altered.  In ruling on a motion for summary judgment based on the defense of qualified immunity, the existence of a disputed, material fact does not *necessarily* preclude summary judgment.  Even if there is a material fact in dispute, summary judgment is appropriate if the Court finds that – viewing the facts in the light most favorable to the plaintiff – the plaintiff has

failed to establish a violation of clearly established constitutional law.  *Saucier v. Katz*, 533 U.S. 194 (2001); *Dickerson v. McClellan*, 101 F.3d 1151, 1158 (6th Cir. 1998).

**III. DISCUSSION**

Qualified immunity shields government officials from "liability for civil damages insofar as their conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known."  *Humphrey v. Marbry*, 482 F.3d 840, 846 (6th Cir. 2007).  The qualified immunity doctrine protects "all but the plainly incompetent or those who knowingly violate the law."  *Id*. at 847.  The task before the Court may be understood as follows:

> In resolving questions of qualified immunity, courts are required to resolve a "threshold question:  Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry." *Saucier* . . . , 533 U.S. [at] 201 . . . .  If, and only if, the court finds a violation of a constitutional right, "the next, sequential step is to ask whether the right was clearly established ... in light of the specific context of the case." [*Id.*]

*Scott v. Harris*, 127 S.Ct. 1769, 1774 (2007).  The question of whether an official is entitled to qualified immunity is a question of law which must be determined by the Court.  *Heflin v. Stewart County, Tenn.*, 958 F.2d 709, 717 (6th Cir. 1992).

Accordingly, the Court will proceed to consider the threshold issue of whether the officers' conduct violated Plaintiff's

5

constitutional rights under the Fourth Amendment. On the facts presented to the Court in this matter, Plaintiff's causes of action for wrongful arrest and malicious prosecution cannot survive as Plaintiff has failed to show a violation of a constitutionally protected right for the reasons stated below.

### A. Plaintiff's Claim of False Arrest

In order to demonstrate false arrest under 42 U.S.C. § 1983, Plaintiff must show that Officers Livingood and Park "violat[ed the] constitutional guarantee" of freedom from arrest without probable cause to believe "that the individual has committed or is about to commit a crime."[3] *Williams ex rel. Allen v. Cambridge Bd. of Educ.*, 370 F.3d 630, 636 (6th Cir. 2004). Probable cause to make an arrest exists if the facts and circumstances within the arresting officer's knowledge "were sufficient to warrant a prudent

---

[3] In his Complaint, Plaintiff states that his causes of action arise under federal law and the Kentucky Revised Statutes. The Kentucky Revised Statutes do not provide for claims of wrongful arrest or malicious prosecution. Since Plaintiff has not raised Kentucky common law as grounds for his claims, the Court need not evaluate Plaintiffs' claims for wrongful arrest or malicious prosecution under Kentucky common law. That said, the Court notes that the Kentucky common law largely mirrors the federal law on these claims, notably with regard to the plaintiff's burden to demonstrate a lack of probable cause for the arrest or prosecution. *See Dunn v. Felty*, 226 S.W.3d 68, 71 (Ky. 2007) (wrongful arrest); *J.J. Newberry Co. v. Judd*, 82 S.W.2d 359 (Ky. 1935) (wrongful arrest); *Raine v. Drasin*, 621 S.W.2d 895, 899 (Ky. 1981) (malicious prosecution). Even if it could be construed from the Complaint that Plaintiff has asserted claims for wrongful arrest or malicious prosecution under Kentucky common law, those claims would fail for the reasons outlined with regard to his federal claims in this memorandum opinion and order.

man in believing that the [arrestee] had committed or was committing an offense."[4] *Beck v. Ohio*, 379 U.S. 89, 91 (1964).

Thus, the Court will first consider whether there was any offense for which Defendants had probable cause to believe that Plaintiff had committed or was committing when they arrived on the scene. For example, under Kentucky statute, one is guilty of disorderly conduct when, "in a public place" "and with intent to cause public inconvenience, annoyance, or alarm, or wantonly creating a risk thereof," one engages in fighting or "violent, tumultuous, or threatening behavior" or "makes unreasonable noise." KRS § 525.060(1)(a) and (b). The question, then, is whether Defendants had knowledge of facts or circumstances, at the time of the arrest, that were sufficient to warrant a prudent man in believing that Plaintiff had committed or was committing the offense of disorderly conduct?

On the night in question, Defendants had been summoned to deal with a reported disturbance, and it is undisputed that, when Officers Parks and Livingood arrived at the scene of Plaintiff's arrest, they encountered Plaintiff in the middle of a public street, facing off with the Mattoxes (who had telephoned for

---

[4] The Court remarks that Livingood did not effect the arrest of Plaintiff. Rather, Defendant Parks arrested Plaintiff by issuing one of the citations. That said, considering the failure of Plaintiffs' claim for wrongful arrest as outlined above, the Court need not resolve whether Defendant Livingood's participation in the events surrounding the arrest was sufficient to make him liable for a wrongful arrest.

7

assistance).[5]  When Defendants approached the scene, Plaintiff announced that he did not believe that Defendants were police officers, attempted to grab their badges even though he had been told not to do so by the officers, and started fighting with the officers.  The officers were informed that, prior to their arrival, Plaintiff "ran his mouth" at the Mattoxes and had told Jeff Mattox that he was "going to whoop [his] ass."

In other words, the facts and circumstances within Defendants' knowledge at the time of the arrest were clearly sufficient to warrant a prudent man in believing that Plaintiff had and was engaged in fighting or "violent, tumultuous, or threatening behavior" (arguing with the Mattox family, threatening to "whoop" Jeff Mattox, grabbing at the officers badges)"with intent to cause public inconvenience, annoyance, or alarm, or wantonly creating a risk thereof" (Plaintiff, by all appearances, intended to and succeeded in annoying or alarming the Mattoxes to the point that they called the police for assistance, then annoyed or alarmed the responding officers by grabbing at their badges and fighting with

---

[5]The Court has been informed that Plaintiff has testified that he was "getting ready to leave" when the officers arrived. Neither party has, however, provided the Court with a transcript of the testimony offered as required under Fed. R. Civ. P. 32(c). Again, the Court cannot rely on information presented in this matter in making its determination as the discovery material has not been placed on file.  Fed. R. Civ. P. 56(b).  That said, the testimony would not be material to the Court's decision, even if properly presented, as it remains undisputed that Plaintiff was in the street and engaged with the Mattoxes when the officers arrived.

them), all the while "in a public place" (on the street). *See Beck*, 379 U.S. at 91; KRS § 525.060(1)(a) and (b). Defendants clearly had probable cause to believe that Plaintiff had committed or was committing the crime of disorderly conduct.

Similarly, Defendants had probable cause to believe that Plaintiff had committed or was committing the crime of menacing under KRS § 508.050. The statute provides that "[a] person is guilty of menacing when he intentionally places another person in reasonable apprehension of imminent physical injury." At the scene in question, Plaintiff was grabbing the officers' badges and fighting with them. Again, the facts and circumstances within Defendants' knowledge at the time of the arrest were clearly sufficient to warrant a prudent man in believing that Plaintiff was placing others, namely the responding officers, "in reasonable apprehension of imminent physical injury." *See Beck*, 379 U.S. at 91; KRS 508.050. No less, because Plaintiff was grabbing their badges and fighting with the defendant officers, Defendants had facts and circumstances within their knowledge at the time of Plaintiff's arrest that were clearly sufficient to warrant a prudent man in believing that Plaintiff was committing the crime of assault in the third degree by "intentionally caus[ing] or attempt[ing] to cause physical injury to . . . [a] state, county, city, or federal peace officer." KRS § 508.025(a)(1).

Ultimately, Defendants had probable cause to arrest Plaintiff

9

for any of the three charges discussed above, and the Court does not believe it necessary to continue with an analysis of the fourth charge for resisting arrest. Plaintiff cannot demonstrate an absence or lack of probable cause for his arrest or show that Officers Livingood and Park "violat[ed his] constitutional guarantee" of freedom from arrest in violation of 42 U.S.C. § 1983. *Williams*, 370 F.3d at 636. His claim for false arrest fails.

### B. Plaintiff's Claim of Malicious Prosecution

The Sixth Circuit Court of Appeals has recognized a § 1983 claim for malicious prosecution arising under the Fourth Amendment. *Fox v. DeSoto*, 489 F.3d 227, 237 (6th Cir. 2007). While the elements of a § 1983 malicious prosecution claim have not been defined, "a plaintiff must show, at a minimum, that there is no probable cause to justify an arrest or a prosecution," and the claim must fail when the defendant did not make, influence, or participate in the decision to prosecute. *Voyticky v. Village of Timberlake, Ohio*, 412 F.3d 669, 675 (6th Cir. 2005) (citing *Thacker v. City of Columbus*, 328 F.3d 244, 259 (6th Cir. 2003)); *see also Fox*, 489 F.3d at 237 ("such a claim fails when there was probable cause to prosecute, or when the defendant did not make, influence, or participate in the decision to prosecute.").

Assuming that Defendants, as opposed to the prosecutors, could be held responsible for the decision to prosecute Hatter for resisting arrest, a point that this Court need not decide, his

10

claim fails because his prosecution was justified by probable cause. "[I]t has long been settled that 'the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause for the purpose of holding the accused to answer.'" *Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir. 2002) (quoting *Ex parte United States*, 287 U.S. 241, 250 (1932)) (affirming dismissal of claims of arrest and indictment without probable cause). Where a party is "indicted pursuant to a determination made by a grand jury, he has no basis for his constitutional claim" of malicious prosecution. *Id.*

There is no dispute that Plaintiff was indicted by the grand jury of Bourbon County on a count of resisting arrest. Plaintiff's indictment by the Bourbon County grand jury on the charge of resisting arrest conclusively forecloses any claim of malicious prosecution against Defendants Park and Livingood with regard to that charge. By virtue of the grand jury's indictment, the existence of probable cause was conclusively determined for the purpose of holding the Plaintiff to answer the charges of resisting arrest.

As to any prosecution of the remaining charges, Plaintiff avers that Defendants maliciously prosecuted him by instituting judicial proceedings against him by arresting and charging him. For the purposes of this order, the Court assumes without deciding

11

that Defendants can be credited with making, influencing, or participating in the decision to issue the arrest citations for disorderly conduct and menacing (both citations actually issued by Defendant Parks), as well as for assault in the third degree (issued by another officer, not a party to this suit). The Court further assumes without deciding that Defendants actually made, influenced, or participated in the decision to prosecute Plaintiff by issuing these arrest citations for purposes of a malicious prosecution claim under 42 U.S.C. § 1983. Nonetheless and for the reasons set forth above, in Section III.A. of this Memorandum Opinion and Order, Plaintiff cannot show, "at a minimum, that there [was] no probable cause to justify [his] arrest" to the extent that his arrest and the arrest citations could constitute malicious prosecution. *Voyticky,* 412 F.3d at 675. His claim must fail on these grounds, as well.

## IV. CONCLUSION

Plaintiff cannot demonstrate that Defendants violated his constitutional rights under the Fourth Amendment to be free from false arrest or malicious prosecution, and Defendants are entitled to qualified immunity as to these claims. For all of the foregoing reasons, Defendants' Motion for Partial Summary Judgment [Record No. 17] shall be granted. Plaintiff's claims for false arrest and malicious prosecution shall be dismissed.

Accordingly, it is **ORDERED**:

(1) that Defendants' Motion for Partial Summary Judgment [Record No. 17] shall be, and the same hereby is, **GRANTED**;

(2) that Plaintiff's claims for wrongful arrest and malicious prosecution in Counts I and II of his Complaint against Defendants shall be, and the same hereby are, **DISMISSED WITH PREJUDICE**.

This the 29th day of May, 2008.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge